## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YAKIMA REGIONAL MEDICAL CENTER**<br>110 South 9th Avenue<br>Yakima, WA 98902<br><br>                    Plaintiff,<br><br><br>        v.<br><br><br>**ERIC D. HARGAN**, In His Official Capacity<br>as Acting Secretary of the U.S. Department<br>of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>                    Defendant<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

## ON MEDICARE REIMBURSEMENT

### <u>JURISDICTION AND VENUE</u>

1.      This is a civil action brought to obtain judicial review of a final decision rendered on October 16, 2017 by the Provider Reimbursement Review Board ("PRRB"), acting as a component of the United States Department of Health and Human Services ("HHS"). The decision for which judicial review is hereby sought is PRRB Case No. 13-1097.

2.      This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

3.      This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. §

1361.  Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e)

4.      Provider timely filed its appeal with the Provider Reimbursement Review Board pursuant to

42 U.S.C. §1395oo(a)(3).

5.      This civil action is filed within sixty (60) days of the date Provider received that decision of

the Board wherein the "...Board denies the [your] request for reinstatement of this case", such

request which was made based upon the Board's prior dismissal of Provider's appeal for "…failing

to submit the required final position paper by the September 1, 2017 deadline."

## PARTIES

6.      Plaintiff, Yakima Regional Medical Center (Medicare Provider Number 50-0012) files this

appeal from the final decision of the PRRB dated October 16, 2017, denying Plaintiff's request for

reinstatement following the Board's dismissal of Case No. 13-1097 (true and correct copy attached

as Exhibit "C").  The subject of that appeal to the PRRB concerns Fiscal Year Ending 06/30/2009.

7.      Plaintiff named herein (hereinafter, "Plaintiff", "Plaintiff Provider" or "Provider") is an acute

care, in-patient healthcare facility that serves a disproportionate share of low-income patients. At

all relevant times, Plaintiff Provider had a Medicare provider agreement with the Secretary of

Health and Human Services and was eligible to participate in the Medicare program.

8.      As set forth more fully below, Plaintiff objects to its dismissal of its appeal and the denial of its

request for reinstatement by the PRRB as arbitrary, capricious and a violation of the rightful and

allowing claims of Plaintiff.

9.      Defendant, Eric D. Hargan, Acting Secretary of the U.S. Department of Health and Human

Services ("Secretary"), or his predecessors in office, is the federal officer responsible for the

administration of the Medicare program.  Defendant Hargan is sued in his official capacity.

## **MEDICARE STATUTORY AND REGULATORY BACKGROUND**

10.     The Medicare program was established to provide health insurance to the age and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

11.     The operating costs of inpatient Provider services are reimbursed by Medicare primarily through the Prospective Payment System (PPS). 42 U.S.C. §1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on Provider- specific factors. See 42 U.S.C. §1395ww(d)(5). This case involves the Provider-specific disproportionate share (DSH) adjustment, which requires the Secretary to provide increased PPS reimbursement to Providers that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

12.     Whether a Provider qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the Provider's "disproportionate patient percentage (DPP)." 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a Provider's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Providers whose DSH percentages meet certain thresholds receive an adjustment which results in increased PPS payments for inpatient Provider services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

13.     The first fraction's numerator is the number of Provider patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. Id.  This case involves this first fraction, which is hereinafter referred to as the SSI fraction, or the Medicare fraction.

14.     The second fraction's numerator is the number of Provider patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the Provider's patient days for such period. Id.  The second fraction is frequently referred to as the Medicaid fraction.

15.     The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their Providerization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of Provider inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

16.     CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and regulations.  42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b). Although the Intermediary calculates the DPP, it is CMS that computes the SSI fraction.

17.     At the close of its fiscal year, a provider must submit a cost report to the fiscal Intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal Intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803.

18.     A provider dissatisfied with the Intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (PRRB) or (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

## SPECIFIC FACTS PERTAINING TO THIS CASE

19.     Plaintiff filed a jurisdictionally proper appeal to the PRRB from the intermediary's final

determination. The two issues in this appeal were:

> a.   Whether the correct SSI percentage was used in the DSH calculation, and;
>
> b.   Whether the numerator of the "Medicaid Fraction" properly includes all
> "eligible" Medicaid days, regardless of whether such days were paid days.

20.     The schedule of proceedings established by the Board required the filing of a final position

paper (hereinafter, "FPP") not later than September 1, 2017.

21.     On August 29, 2017, Plaintiff submitted it FPP to the Board, and to the intermediary. Not

noticed by Plaintiff at the time of transmission, but inadvertently and through clerical error, the

cover page of the FPP erroneously indicated that the submitted paper was regarding PRRB Case

Number 13-0448 and Fiscal Year Ending ("FYE") 06/30/20**08**.

22.     Despite these erroneous entries of case number and FYE, the most critical identifying factor of

the paper, and indeed, the information most relied upon by the intermediary in order for it to

perform its Medicare DSH calculations, was <u>correct</u> as set forth in the FPP submitted on August

29, three days in advance of the Board deadline. That factor is referred to as the Patient Listing (for

purposes of this Complaint) and can be found Exhibit "D". The listing is comprised of specific

patient days that are to be included in the Medicare DSH calculation ("eligible days"). That is to

say, in order for Plaintiff to substantiate its claims, it must show the *eligible* patient days, including

each patient's individual health information ("PHI") including but by no means limited to the

patient's name, date of birth, social security number, medical identification number, insurance

identification number, number of patient days in the hospital, including dates of admission and

discharge.  The most critical information for this specific appeal is the patient's **Medicaid Status**;

whether the patient was, or was not eligible for Medicaid at the time of his/her hospital stay (see issue b. set forth in paragraph 19(b), above).  A provider such as Plaintiff herein must first confirm through steps specific to its state of situs (in this instance, the state of Washington) whether such eligibility has been issued by that state agency/department. Plaintiff then confirms such standing in that aspect of the Patient Listing, and for each specific patient. The latter is critical information that must be provided to the intermediary inasmuch as the numerator of the Medicaid fraction (as noted, above) affects that fractional component of the DSH formula, and concerns the total number of days that each such patient was eligible for Medicaid, which, when added to the Medicare (or, SSI) fraction, calculates the final DSH Medicare percentage which the intermediary will use to determine what adjustment, if any is to be made to the provider's Medicare DSH reimbursement payment.

23.     In view of this rather in-depth description it is now noteworthy to re-emphasize that Plaintiff did provide all of this critical information for each patient within the Patient Listing exhibit attached to the initially filed FPP, <u>including each patient's Medicaid Status.</u>

24.     Despite the timely filing of the FPP, the Board dismissed Plaintiff's appeal by its letter dated September 11, 2017 (a true and correct copy attached hereto as Exhibit "A").

25.     Upon learning of the errors regarding the misstated PRRB case number and FYE figures in the initially **timely** submitted FPP, and the notice by the Board that it had dismissed Plaintiff's appeal, Plaintiff submitted a corrected copy of the FPP on or about September 26, 2017 to the PRRB and to the intermediary.  At the time of the re-submission of the 'corrected' FPP, Plaintiff also requested that the Board reinstate Plaintiff's appeal (a true and correct copy of the Request for Reinstatement attached hereto as Exhibit "B") which had been dismissed based upon Plaintiff's "...failing to submit the required final position paper by the September 1, 2017 deadline" (see, Exhibit "A").

6

That determination and subsequent dismissal was in and of itself erroneous; Plaintiff <u>did</u> file its FPP in a timely fashion, on August 29 and in advance of the September 1 deadline. It did contain the above-noted clerical errors, but the critically important Patient Listing was provided (and it <u>was</u> accurate in its data for <u>this</u> appeal) as well as argument set forth that was specific to this appeal. Thereafter, on September 26, Plaintiff filed a request for reinstatement with the Board; the Board denied that request (see, Exhibit "C") giving rise to the instant suit.

26.     In its October 16, 2017 letter of denial for the reinstatement request (Exhibit "C"), the Board contends that, "The Provider's appeal was dismissed by the Board on September 11, 2017 for **failing to submit the required final position paper** by the September 1, 2017 deadline." (emphasis added). This statement is simply inaccurate and untrue. Though the final position paper submitted by Plaintiff on August 29 did contain the above-noted clerical errors (thereafter corrected in Plaintiff's September 26 re-submission), it nevertheless *was* submitted timely. As was Plaintiff's requisite *preliminary* position paper, as acknowledged by the Board (Exhibit "C").

27.     The Board justified its decision on the basis of 42 C.F.R. § 405.1868(b), PRRB Rule 41.2 and PRRB Rule 27.1.   The Board quotes the law and Board Rules which states in this regard:

> "…The Board's powers include the authority to take appropriate actions in response to the failure of a party to a Board appeal to comply with Board rules and orders….
>
> (b)  If a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board ***may*-
>
> (1) Dismiss the appeal with prejudice…
>
> 42 C.F.R. §405.1868 (emphasis added).

In its reinstatement denial letter, the Board goes on to point out, "Board Rule 41.2 indicates that the Board *may* dismiss a case (emphasis added) '… upon failure of the Provider to comply with Board procedures….'" Specifically, Board Rule 27.1 states that [f]ailure to **timely** file the position papers *may* result in dismissal of the case, or any of the actions under 42 C.F.R. § 405.1868." (emphasis added). Hence, it is abundantly clear that the Board's decision to dismiss a case under such circumstances was *discretionary,* and not mandatory.

The Board adds in its footnote to that denial letter, **"The Board acknowledges that Board Rule 27.1 does not require dismissal of an appeal for failure to timely file the Final Position Paper"** (emphasis added) (Exhibit "C" at page 2).  Not only does the Board acknowledge that dismissal of the case is not mandatory under any law, regulation or Board Rule, the denial letter fails to acknowledge in any meaningful way that a FPP was, for all practical purposes, filed for Plaintiff's FYE 2009.  Though the Board states that the initial FPP timely filing, "… does not contain any information regarding FYE 2009…" it does in fact contain such specific information as noted, above with respect to the critical Patient List information, such information that the intermediary must have in order to perform its analysis and calculations.

28.    Finally, under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C).

**COUNT I - REMAND**

29.    The allegations in Paragraphs 1-28 are incorporated as if fully set forth herein.

30.    The PRRB acknowledges that its Rules do not require dismissal for failure to timely file the Final

Position Paper.  Moreover, while it acknowledges that it did *receive* Plaintiff's Final Position Paper

in a timely manner, it nevertheless draws a distinction without meaning by stating that Plaintiff did

not timely *file* the Final Position Paper.  Plaintiff acknowledges the clerical errors of its initial

submission, but it *was* a timely filing as required. Moreover, Plaintiff corrected its clerical errors

by re-submitting its FPP just two weeks later.  Surely, this two-week "delay" of the corrected FPP

could not and did not prejudice the Board in any fashion.

31.    Instead of dismissing the appeal and thereafter denying Plaintiff's request for reinstatement of

its appeal (which, if upheld, will cost Plaintiff thousands of dollars in additional Medicare DSH

reimbursement which it is overwise entitled to recovery under the Medicare Act), the Board should

have granted the reinstatement upon its receipt of Plaintiff's re-submission of the FPP with the

clerical errors corrected.

32.    The Board's decision to dismiss Plaintiff's appeal, and thereafter, deny Plaintiff's reinstatement

request was arbitrary and capricious, and prejudices just one party in this matter, namely, Plaintiff.

33.    Based upon the foregoing, this Court should order the Secretary to remand Plaintiff's appeal to

the PRRB with an order that the PRRB conduct a proceeding on the merits of Plaintiff's appeal.

### COUNT TWO – MANDAMUS

34.    The allegations in Paragraphs 1-33 are incorporated by reference as if fully set forth herein.

35.    This Court has jurisdiction under 28 U.S.C. § 1361, mandamus jurisdiction, because Plaintiff has

exhausted its administrative remedies.  *See Monmouth Medical Center v. Thompson,* 257 F.3d 807

(D.C. Cir. 2001).

36.    Plaintiff timely and properly filed its appeal to the PRRB.

37.    The Board determination to deny Plaintiff's request for reinstatement following the wrongful dismissal of its appeal (for clerical errors in its timely filed FPP) was an abuse of its discretion, and its decision to deny that request was arbitrary and capricious, and did not follow the spirit of the law.

38.    Moreover, Plaintiff did in fact timely file its Final Position Paper, albeit with clerical errors that were promptly addressed, and the corrected FPP thereafter submitted.

39.    Based upon the foregoing, the Court should order a writ of mandamus to issue thus ordering the Secretary to remand Plaintiff's appeal to the Board to conduct and complete proceedings on the merits of Plaintiff's appeal.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

1.    Ordering the Secretary to remand Plaintiff's appeal for its FYE 2009 in writing to the PRRB, with copy of such writing to legal counsel for Plaintiff, instructing the PRRB (1) to assert jurisdiction over and reinstate the appeal of Plaintiff, and (2) to issue a letter to Plaintiff and its intermediary no later than thirty days following the date of remand to the PRRB, with copy to legal counsel for Plaintiff, notifying them that the PRRB has asserted jurisdiction over and reinstated the appeal, and scheduling proceedings on the merits;

2.    Issuing a writ of mandamus to order the Secretary to remand Plaintiffs appeal for its FYE 2009 to the Board to conduct and complete proceedings on the merits of Plaintiff's appeal;

3.    That this Court shall retain jurisdiction over this case for purposes of enforcement of the Secretary's compliance with this Court's order;

4.    That the Court award Plaintiff legal fees and costs; and,

5. That the Court award Plaintiff any and all such further relief as the Court may deem just

and proper under the circumstances.

Dated: April 7, 2015

Respectfully submitted,

*Alan J. Sedley*

ALAN J. SEDLEY, APLC (Bar No. OH0017)

SEDLEY HEALTH LAW GROUP

19200 Von Karman Avenue

Fourth Floor

Irvine, CA 92612

Phone: (949) 502-5399

asedley@sedleyhealthlaw.com

*Attorneys for Plaintiff*